THE STATE OF OHIO, APPELLANT, *v.* MONCRIEF, APPELLEE.
THE STATE OF OHIO, APPELLEE, *v.* MONCRIEF, APPELLANT.

(Nos. 40635 and 40742—Decided June 26, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, for the state of Ohio.

*Mr. Hyman Friedman* and *Ms. Sandra Fegan Biggar,* for Dana L. Moncrief.

KRUPANSKY, J. In the within matter, Dana L. Moncrief, defendant, was indicted on one count of possessing criminal tools pursuant to R. C. 2923.24, one count of having weapons while under disability pursuant to R. C. 2923.13, and one count of carrying concealed weapons pursuant to R. C. 2923.12.

By motion prior to trial, defendant requested the trial court to rule the three offenses charged in the indictment constituted allied offenses of similar import and thereafter require the prosecutor to elect on which offense the state would proceed. The trial court ruled that possessing criminal tools and carrying concealed weapons are allied offenses of similar import and ordered the state to elect to proceed on only one of those two offenses. The state objected to the ruling and elected to proceed with the count of possessing criminal tools. The state appealed this ruling and was assigned Court of Appeals No. 40635 on appeal.

Trial by jury commenced in the Court of Common Pleas of Cuyahoga County on March 28, 1979. On March 29, 1979, the jury found defendant guilty of possessing criminal tools and having weapons while under disability. Defendant was sentenced to two to five years imprisonment on each count and costs, sentences to run concurrently. Defendant appealed his conviction and was assigned Court of Appeals No. 40742 on appeal.

Prior to trial, defendant filed a motion to suppress the physical evidence seized by police, i.e., a 12 gauge sawed-off shotgun and two 12 gauge shotgun shells. At the pretrial suppression hearing, the state offered Cleveland Police Officer James Harrison, who testified he and his partner, Michael O'Malley, stopped a vehicle at East 77th Street and Euclid Avenue after the driver failed to stop for a red traffic signal at the intersection of East 79th Street and Euclid Avenue. The vehicle was stopped at approximately 4:30 a.m. on October 15, 1978. Officer Harrison testified there were three occupants in the vehicle; two were seated in the front seat and defendant was seated in the right rear seat. After requesting a driver's license, the three occupants were ordered out of the vehicle. The police had their guns drawn. Officer Harrison testified the three occupants complied with the order and were thereafter frisked for weapons. Officer Harrison testified the limited

search for weapons was conducted for the police officers' personal protection, because they were in a high crime area of the city and it was 4:30 a.m.

As a result of the frisk, a 12 gauge shotgun shell was found in defendant's pocket. Officer Harrison testified he opened the doors to the vehicle for the purpose of looking for weapons. This search was conducted while the defendant, the driver, and the other passenger were taken back to the police cruiser. Officer Harrison testified a sawed-off 12 gauge shotgun, loaded with one shell, was found under the front, right passenger seat; the butt of the weapon was protruding approximately six inches from the back of the seat and into the area in which defendant had been seated. Although partially hidden, the shotgun was in plain view on the floor of the automobile in the area where the passenger would normally rest his feet. Officer Harrison testified a substantial amount of debris under the front seat prohibited the sawed-off shotgun from being completely hidden under the seat. He further testified the shotgun was accessible to defendant, the rear seat passenger. Officer Harrison testified the only reason the automobile was searched was because the 12 gauge shotgun shell had been found in defendant's possession.

Officer Michael O'Malley corroborated Officer Harrison's testimony. Defendant was thereafter arrested and brought down to the police station.

The trial court overruled the motion to suppress evidence.

At trial, Officer Harrison's and Officer O'Malley's testimony was substantially similar to their testimony at the suppression hearing. Officer Harrison additionally testified the overall length of the shotgun was 15 to 16 inches and the length of the barrel was approximately 12 inches. He also testified there had been crimes reported in the area of East 77th Street and Euclid Avenue the night of October 14-15, 1978; however, the automobile was not stopped as a result of any of these other reported crimes. Officer O'Malley testified he asked the driver of the automobile for his driver's license after stopping the automobile. When the driver failed to produce the requested license, all the occupants of the automobile were ordered to exit the automobile.

It was stipulated that defendant had been convicted of burglary prior to October 15, 1978.

The state rested.

Defendant testified in his own behalf. He denied the police had found a shotgun shell in his pocket. He testified he did not own the shotgun, he did not have it in his possession or under his control, and he had not seen the shotgun while he was in the automobile. Defendant further testified he was beaten by Officer Harrison at the police station.

Hilton Hardiman, the driver of the automobile, and Irving Higgins, the other passenger, also testified as to the events of that night.

The defense rested.

The jury returned a verdict of guilty of possessing criminal tools and having weapons while under disability.

In Court of Appeals No. 40635, the state of Ohio assigns one error on appeal:

"The court erred in ruling that possession of a criminal tool and carrying a concealed weapon are 'virtually identical crimes' which require election pursuant to Ohio Revised Code, Section 2941.25."

In Court of Appeals No. 40742, defendant assigns three errors on appeal:

"I. The trial court's failure to grant appellant's motion to suppress evidence violated his Fourth and Fourteenth Amendment Constitutional rights:

"A. Ordering a passenger out of a vehicle after the driver's stop for a traffic violation constitutes an unreasonable seizure in violation of his Constitutional rights.

"B. A search of a passenger subsequent to the driver's stop for a traffic violation constitutes an unreasonable search in violation of his Constitutional rights.

"C. A search of a vehicle following an illegal search and seizure cannot be justified by the plain view exception to the warrant requirement.

"II. The trial court erred in permitting appellant's conviction of two allied offenses of similar import in violation of O.R.C. 2941.25, to wit: possession of criminal tools and having a weapon while under a disability.

"III. The trial court erred in denying appellant's motion for judgment of acquittal at the close of the state's case and again at the close of the defendant's case:

"A. The state failed to prove each and every element of possession of criminal tools.

"B. The state failed to prove each and every element of having a weapon while under a disability."

In the state's assignment of error, the state contends the trial court erred in ruling possessing criminal tools and carrying concealed weapons are allied offenses of similar import for purposes of R. C. 2941.25. In defendant's second assignment of error, defendant contends the trial court erred in ruling possessing criminal tools and having weapons while under disability are not allied offenses of similar import for purposes of R. C. 2941.25. These assignments of error present similar issues; therefore, they shall be considered together.

R. C. 2923.12 (carrying concealed weapons) provides in pertinent part as follows:

"(A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance."

R. C. 2923.24 (possessing criminal tools) provides in pertinent part as follows:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating such dangerous ordnance, materials, or parts are intended for legitimate use***[.]"

R. C. 2923.13 (having weapons while under disability) provides in pertinent part as follows:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"***

"(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony***[.]"

R. C. 2941.25 (multiple counts) provides as follows:

"(A) Where the same conduct by defendant can be con-

strued to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

If we use the following chart and compare the elements of carrying concealed weapons and possessing criminal tools as set forth in Schroeder-Katz, Ohio Criminal Law, Elements of Crimes, at pages 1017 and 1063, it becomes readily apparent the elements and thrust of each offense are dissimilar.

| *"Carrying Concealed Weapon[s]\****   | *"Possessing Criminal Tools\****   |
|---|---|
| "Elements: | "Elements: |
| "(1) *Knowingly* carry or have *concealed* | "(1) Possess or have under control |
| "(2) On his person or concealed ready at hand | "(2) Any substance, device, instrument, or article |
| "(3) Any deadly weapon or dangerous ordnance." | "(3) With *purpose to use criminally.*" |

(Emphasis added.)

The first and second elements of carrying concealed weapons require proof of *knowing concealment.* The first element of possessing criminal tools merely requires proof of possession or control.

The offense of possessing criminal tools has the added element of proving criminal purpose. The offense of carrying concealed weapons has no such element. .

Based upon the specific facts of this case which deals with an instrumentality designated as a dangerous ordnance, to wit, a sawed-off shotgun (R. C. 2923.11[F] and [J][1] ), the thrust of the offense of carrying concealed weapons is to prohibit the concealment of a dangerous ordnance, regardless of any legitimate purpose[1] for possession of said dangerous ordnance. The presence of a legitimate purpose for concealing a dangerous ordnance does not provide a defense to carrying concealed weapons. See R. C. 2923.12(C). Unlike the offense

---

[1] Offhand, it is difficult to perceive any legitimate purpose for possessing a sawed-off shotgun.

of carrying concealed weapons, the offense of possessing criminal tools prohibits the possession or control of a dangerous ordnance, but only where it is possessed or controlled with purpose to use it criminally.

Each offense contains dissimilar elements and proscribes different activities. A different animus is required as to each offense, and violation of one statute does not necessarily amount to violation of the other statute.

Under the applicable statutes, situations may arise in which a person could be found guilty of carrying concealed weapons and not guilty of possessing criminal tools, *e.g.,* where a person conceals a dangerous ordnance such as dynamite but possesses it for a legitimate use such as excavation work. Situations may arise in which a person could be found guilty of possessing criminal tools and not guilty of carrying concealed weapons, *e.g.,* where a person has under his control a dangerous ordnance with purpose to use it criminally but the ordnance is not carried or concealed on his person or concealed ready at hand.

The trial court erred in finding the offenses of carrying concealed weapons and possessing criminal tools to be allied offenses of similar import and thereafter requiring the prosecutor to make an election prior to trial. Assuming, *arguendo,* the offenses were allied offenses of similar import, R. C. 2941.25(A) requires only that a person not be *convicted* of more than one of the allied offenses of similar import. R. C. 2941.25(A) does not require an election to be made between allied offenses of similar import prior to trial.[2] The offenses were not allied offenses of similar import and the trial court erred in requiring the prosecutor to proceed upon only one offense. If the evidence supported a conviction on both offenses,

---

[2] This court recognizes each case must be treated pursuant to its own unique fact situation; however, perhaps a purer form of justice would be achieved, not to mention judicial economy, if these issues were decided after a jury returned its verdict.

In determining whether two or more offenses constitute allied offenses of similar import pursuant to R. C. 2941.25(A) prior to trial, the trial judge must necessarily analyze statutes on their face without taking into consideration any evidence to be presented at trial. When confronted with the same issue after trial, the trial judge is able to take into consideration the evidence presented at trial in addition to the statutory language. It logically follows that although a trial judge may be justified in overruling a motion made prior to trial to determine whether offenses are allied offenses of similar import, this does not preclude the trial judge from granting the same motion at the close of all the evidence or after the jury returns its verdict.

defendant could have been convicted of both offenses. R. C. 2941.25(B).

Under the circumstances of this case, possessing criminal tools and having weapons while under disability are not allied offenses of similar import. The two offenses are dissimilar and each offense requires the presence of a different animus. Under the applicable statutes, situations may arise in which a person could be found guilty of possessing criminal tools but not guilty of having weapons while under disability, *e.g.*, where a person has under his control or possesses a dangerous ordnance with purpose to use it criminally but is under no disability as defined in R. C. 2923.13. Under the applicable statutes, situations can arise in which a person could be found guilty of having weapons while under disability but not guilty of possessing criminal tools, *e.g.*, where a person has under his control or possesses a dangerous ordnance such as dynamite intended for legitimate use such as a construction project (R. C. 2923.24[A] and [B][1] ) but while the person is under disability as defined in R. C. 2923.13. The thrust and scope of these offenses are different. The offenses constitute offenses of dissimilar import pursuant to R. C. 2941.25(B).

Although the trial court erred in requiring the state to elect between the offenses of carrying concealed weapons and possessing criminal tools, the trial court did not err in ruling that defendant could be convicted of both possessing criminal tools and having weapons while under disability.

The state's assignment of error is well taken.

Defendant's second assignment of error is not well taken.

In defendant's first assignment of error, he contends the search and seizure of defendant's person and the automobile in which he was riding were illegal.

A limited frisk of a person who has been legally stopped is permissible where a police officer reasonably fears for his safety. *Adams* v. *Williams* (1972), 407 U. S. 143; see *Terry* v. *Ohio* (1968), 392 U. S. 1. The hour of the night and the high crime nature of an area amount to considerable justification for conducting a limited weapons search. See *State* v. *Rogers* (Cuyahoga Co. Ct. of Appeals No. 36908, March 3, 1977), unreported. Additionally, the officers were outnumbered and the driver of the automobile did not produce his driver's license when requested to do so.

The right to frisk for the limited purpose of searching for weapons has been extended to other occupants of a stopped automobile. See *United States* v. *Berryhill* (C.A. 9, 1971), 445 F. 2d 1189; *People* v. *Williams* (1975), 28 Ill. App. 3d 189, 328 N.E. 2d 89. The frisk of defendant and the seizure of the shotgun shell found in his pocket was legal.

On the basis of finding a shotgun shell, the police were justified in conducting a further limited search for weapons in the automobile even though the car was not in the immediate control of defendant or the other two occupants of the vehicle at the time of the limited search. The occupants were not under arrest at the time of the limited search of the automobile and, conceivably, would reenter the automobile. The officers had a right to protect themselves by conducting a limited search for weapons in the vehicle to which defendant and the other two occupants would be returning. *United States* v. *Green* (C.A. D.C., 1972), 465 F. 2d 620.

Under the circumstances of this case, the search and seizure conducted by the police was legal. *Terry* v. *Ohio, supra; United States* v. *Berryhill, supra.*

Defendant's first assignment of error is not well taken.

In defendant's third assignment of error, he contends the trial court erred in denying defendant's motions for judgment of acquittal which he made at the close of the state's case-in-chief and at the close of all the evidence.

As to the offense of possessing criminal tools, defendant contends the state failed to prove defendant's "purpose" for having the sawed-off shotgun under his control was to "use it criminally," which is an element of the offense. R. C. 2923.24. R. C. 2923.24(B)(1) makes possession or control of any dangerous ordnance prima facie evidence of criminal purpose. R. C. 2923.11(J)(1) includes any "sawed-off firearm" in the definition of "dangerous ordnance." The sawed-off shotgun under defendant's control fell within the definition of "sawed-off firearm" contained in R. C. 2923.11. There was prima facie evidence of criminal purpose.

R. C. 2923.13, having weapons while under disability, provides in pertinent part as follows: "***no person shall *knowingly* acquire, *have,* carry, or use any firearm or dangerous ordnance***" (emphasis added). Defendant contends the state failed to prove he knowingly "had" the sawed-off

shotgun. In *State* v. *Hardy* (1978), 60 Ohio App. 2d 325, 327, this court considered the meaning of the word "have" as used in R. C. 2923.13 and held as follows:

"In order to 'have' a firearm, one must either *actually* or *constructively* possess it. Actual possession requires ownership and, or, physical control. Constructive possession may be achieved by means of an agent." (Emphasis *sic.*)

Defendant had a 12 gauge shotgun shell in his pocket at the time he was frisked. Defendant had been seated in the right rear passenger seat of the automobile the police stopped. A loaded 12 gauge sawed-off shotgun was found underneath the right side of the front seat of the automobile. The shotgun was protruding approximately six inches from the rear of the front seat and was in plain view. The evidence also revealed other objects under the front seat prohibiting the sawed-off shotgun from being completely hidden under the seat. There was sufficient evidence of defendant's actual possession of the sawed-off shotgun to overcome a motion for judgment of acquittal and permit this issue to be submitted to the jury. The jury could infer from the evidence that defendant possessed, or "had" the sawed-off shotgun.

We have reviewed the evidence and find sufficient evidence of each and every essential element of possessing criminal tools and having weapons while under disability.

Defendant's third assignment of error is not well taken.

In Court of Appeals No. 40635, judgment reversed and cause remanded for trial on the offense of carrying concealed weapons.

In Court of Appeals No. 40742, judgment affirmed.

> *Judgment reversed and*
> *cause remanded in case No. 40635.*
> *Judgment affirmed in case No. 40742.*

JACKSON, P. J., and DAY, J., concur.

DAY, J., concurring. I concur in the judgment but with the caveat that my understanding is that the conclusions necessary to judgment on the alliance of offenses are hinged largely upon particular factual considerations rather than determinations of law. This is the essence of footnote 2 of the opinion. See also the discussion in *Maumee* v. *Geiger* (1976), 45 Ohio St. 2d 238, 243-244.