### State v. Esparza
### Case No. 4-88-6
### Defiance County (3rd)
### Decided February 1, 1990
[Cite as 1 AOA 121]

*Mr. Thomas S. Molitierno, Attorney At Law, 206 East Main Street, Fayette, Ohio 43521, For Appellant,*

*Mr. Peter R. Seibel, Prosecuting Attorney, Mr. Timothy R. Hutchinson, 509 Second Street, Defiance, Ohio 43512, For Appellee.*

MILLER, J.

This is an appeal by defendant, David O. Esparza, from a judgment of the Court of Common Pleas of Defiance County revoking the defendant's probation. The trial court in a companion case sentenced defendant to an indeterminate term of one and one-half years to five years upon being found guilty of one count of domestic violence, with a specification of a prior conviction, in violation of R.C. 2919.25, and in addition, reimposed a sentence of three to five years to be served consecutively with the above mentioned sentence for violating the conditions of probation in case number 4920.

By journal entry filed December 1, 1987, the trial court had placed the defendant on probation for a period of five years subject to certain specified conditions. One of the conditions of probation was that the defendant "in addition to the restrictions on weapons under the standard terms and conditions of

probation the Defendant will possess no knives other than a pocket knife not to exceed three (3) inches in length."

On December 27, 1987, the defendant was arrested for a domestic violence charge, in violation of R.C. 2919.25 and his probation officer found eleven knives at the defendant's residence. Defendant was then charged with violating a condition of his probation.

The defendant was brought before the trial court on February 12, 1988.

The trial court in its journal entry found and ordered the following:

"* * *

"The Court having heard the testimony and reviewed the evidence, and received arguments of Counsel, the Court now FINDS that the Defendant has violated the terms and conditions of his probation as alleged. The Court then indicated that it would take this matter under advisement and the matter was continued for disposition at a later date.

"The 25th day of March, 1988, this cause was reconvened for the purposes of disposition of the previously found probation violation. The Defendant was present in Court represented by Counsel, Mr. Thomas Molitierno of Fayette, Ohio. The State of Ohio was represented by Morris J. Murray and Richard L. Altman, Assistant Prosecuting Attorneys for Defiance County. The Court having heard arguments of Counsel, and there being no objection to proceeding with disposition at this time, it is now therefore ORDERED, ADJUDGED and DECREED that the original sentence of three (3) to five (5) years with the Ohio Department of Rehabilitation and Corrections at Orient, Ohio is hereby reimposed. Said term of incarceration to be served consecutively with that imposed in case number 5130. * * * "

The defendant appeals from this judgment entry setting forth three assignments of error.

We will consider the assignments of error of the defendant in a slightly different order than set forth by the defendant.

Assignment of error number one:

"THE TRIAL COURT'S PROCEDURE WAS UNLAWFUL IN THAT JUDGE GARETH HITCHCOCK HAD PLACED DEFENDANT-APPELLANT ON PROBATION AND JUDGE STEPHEN RUYLE PRESIDED OVER THE PROBATION VIOLATION HEARING IN CONTRAVENTION OF R.C. 2951.08."

Defendant contends that, pursuant to R.C. 2951.08 and R.C. 2951.09, he was entitled to a probation revocation hearing before the judge before whom the matter was pending.

R.C. 2951.08, effective 3-18-65, provided:

"During a period of probation, any field officer or probation officer may arrest the defendant without a warrant and bring him before the judge or magistrate before whom the cause was pending.

Such arrest may also be made by any sheriff deputy sheriff, marshal, deputy marshal, watchman, or police officer upon the written order of the chief probation officer, if the defendant is under the supervision of a county depart- ment of probation, or on the warrant of the judge or magistrate, or on the order of an officer of the adult parole authority created by section 5149.02 of the Revised Code, if the defendant is under its supervision.

Further, R.C. 2951.09, effective 10-1-53, provides:

"When a defendant on probation is brought before the judge or magistrate under section 2951.08 of the Revised Code, such judge or magistrate shall immediately inquire into the conduct of the defendant, and may terminate the probation and impose any sentence which might ordinarily have been imposed or continue the probation and remand the defendant to the custody of the probation authority, at any time during the probation period. * * *"

However, Crim. R. 32.3 (A), effective 7-1-73, provides:

"The court shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing."

Crim R. 32.3 contains no specific requirement that the judge or magistrate, before whom the cause is pending, decide whether the defendant's probation should be revoked, as set forth in R.C. 2951.08 and R.C. 2951.09.

Ohio courts have found that Crim R. 32.3 has superseded the statutory provisions in R.C. 2951.08 and R.C. 2951.09. *State* v. *Carreker* (1987), 39 Ohio App. 3d 112.

Section 5(B), Article IV of the Constitution of Ohio provides:

"(B) The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session.

Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

\* \* \*

"Procedure" is defined as:

"The mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or defines the right, and which, by means of the proceeding, the court is to administer; the machinery as distinguished from its product."

Black's Law Dictionary (5th Ed. 1979) 1083.

We find that the issue of the judge who may conduct a probation revocation hearing is procedural and therefore within the coverage of the Criminal Rules.

In *Gagnon* v. *Scarpelli* (1973), 411 U.S. 778, 787 93 S. Ct. 1756, 1761 and 1762, the Supreme Court, deciding on the due process requirements necessary in a probation revocation hearing, provided the following:

"* * * The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the 'minimum requirements of due process' include very similar elements:

'(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds goods cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking [probation or] parole. *Morrissey* v. *Brewer, supra,* [408 U.S. 471] at 489, 92 S. Ct. at 2604

We find that the record herein indicates that the defendant was afforded a final hearing on the revocation of his probation which met the standards set forth in *Gagnon* and *Morrissey.*

In addition, it is apparent from the record that Crim. R. 32.3 was complied with and appellant produced no evidence that he was in any way prejudiced because a judge other than the one who initially placed him on probation conducted the final hearing on the revocation of his probation.

Assignment of error number one is not well taken.

Assignment of error number three:

"THE KNIVES ADMITTED INTO EVIDENCE BY THE TRIAL COURT SHOULD HAVE BEEN EXCLUDED PURSUANT TO THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AS THEY WERE THE FRUIT OF AN UNLAWFUL SEARCH AND SEIZURE."

Defendant contends that his wife's consent to the search by the probation officer was invalid because it had been fraudulently procured, and the wife did not have the authority to authorize a search of his dresser

drawer because the drawer contained items belonging to him.

In *Griffin* v. *Wisconsin* (1987), ____ U.S. ____; 107 S. Ct. 3164, 3167, the United States Supreme Court, construing a Wisconsin regulation in light of the Federal Constitution, stated:

> "A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' Although we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), [citation omitted], we have permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' *New Jersey* v. *T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 749, 83 L.Ed.2d 720 (1985) (BLACKMUN, J. concurring in judgment). Thus, we have held that government employers and Supervisors may conduct warrantless, work-related searches of employees' desks and offices without probable cause, *O'Connor* v. *Ortega*, 480 U.S. ____, 107, S. Ct. 1492, 94 L.Ed.2d 714 (1987), and that school officials may conduct warrantless searches of some student property, also without probable cause, *New Jersey* v. *T.L.O., Supra.* We have also held, for similar reasons, that in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable cause requirements as long as their searches meet 'reasonable legislative or administrative standards.' *Camara* v. *Municipal Court*, 387 U.S. 523, 538, 87 S. Ct. 1727, 1736, 18 L.Ed.2d. 930 (1967). [citations omitted].

> "A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements. * * *

> "* * * To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only * * * conditional liberty properly dependent on observance of special [probation] restrictions'. *Morrissey* v. *Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

> "* * * A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct, see *New Jersey* v. *T.L.O.*, 469 U.S., at 340, 105 S.Ct. at 743, and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create. * * *"

> "We think that the probation regime would also be unduly disrupted by a requirement of probable cause. To take the facts of the present case, it is most unlikely that the unauthenticated tip of a police officer-bearing, as far as the record shows, no indication whether its basis was first-hand knowledge or, if not, whether the first-hand source was reliable, and merely stating that Griffin 'had or might have' guns in his residence, not that he certainly had them - would meet the ordinary requirement of probable cause. But this is different from the ordinary case in two related respects: First, even more than the requirement of a warrant, a probable cause requirement would reduce the deterrent effect of the supervisory arrangement. The probationer would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected. * * *"

> "In such circumstances it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases,

especially those involving drugs or illegal weapons, the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society.

The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character and circumstances. * * *"

The defendant further argues that the search was unlawful because the consent given by his wife was not valid.

The Supreme Court of the United States, in *United States* v. *Matlock* (1974), 415 U.S. 164, 172, addressed the issue of third party consent, as follows:

"* * * [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effect sought to be inspected."

The Court proceeded to define "common authority" as follows:

"Common authority is, of course, not to be implied form the mere property interest a third party has in the property. The authority which justifies the third party consent does not rest upon the law of property with its attendant historical and legal refinements * * * [citations omitted] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 172, f.n.7."

The Supreme Court of Ohio, in *State* v. *McCarthy* (1971), 26 Ohio St. 2d 87, syllabus, addressed the specific issue of third party spousal consent as follows:

"The Fourth Amendment to the constitution of the United States interdicts only those searches and seizures which are unreasonable and a wife's voluntary consent to a search of her and her husband's mutual residence is sufficient to constitutionally permit an otherwise reasonable search of the *common areas* thereof. [Emphasis added]."

We find, based on the foregoing authority, that Mrs. Esparza's access and joint control in the premises were sufficient to justify her consent to the search of the bedroom dresser drawer. See, *United States* v. *Matlock, supra;* C.f. *State* v. *Masten* (Sep. 29, 1989), Hancock App. No. 5-88-7, unreported.

In this case, the unlocked dresser drawer was located in a common room of the residence, and it can reasonably be concluded that Mrs. Esparza exercised mutual use or joint control over the dresser to the extent that the defendant assumed the risk that his wife would permit the dresser to be searched.

Further, the record indicates that, although the drawer searched contained certain of defendant's clothing, Mrs. Esparza did have access to the contents of the drawer. Therefore, we conclude that Mrs. Esparza had authority to consent to a search of the common area which authority could justifiably be extended to include search of the dresser drawer itself. See *Fraizer* v. *Cupp* (1968), 394 U.S. 731, 740, 89 S.Ct. 1420, 1425.

In addition, the defendant also contends that the consent given by his wife was not voluntarily given, but was the result of coercion.

The Supreme Court of the United States, in *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, 249, 93 S.Ct. 2041, 2059, stated:

"* * * [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is

not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent.   * * * "

Although the above refers to a subject of the search, we conclude that it is equally applicable here.

Based on the record before this court, there was sufficient evidence that the wife's consent was voluntarily given, and not the result of coercion, and that her consent justified the search.

We finally conclude for the foregoing reasons that the search of the defendant's residence was "reasonable" and "lawful" within the meaning of the Fourth Amendment.

Assignment of error number three is not well taken.

Assignment of error number two:

"THE TRIAL COURT'S FINDING THAT THE DEFENDANT-APPELLANT HAD VIOLATED THE CONDITIONS OF HIS PROBATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

The defendant contends that he did not violate his probation for possession of the knives since the record indicates that he did not carry the knives on his person while on probation.

At the hearing on Motion for Revocation of Probation, the court took judicial notice of the journal entry of conviction, sentence, and probation, along with the standard terms and conditions of the probation. (T.7).

In the December 1, 1987 Journal Entry the court stated that "the defendant is placed on Probation for a period of five (5) years under the standard terms and conditions of probation as established by Rule of Court plus the following special conditions:

"* * *

"5. In addition to the restrictions on weapons under the standard terms and conditions of probation, the Defendant will posses no knives other than a pocket knife not to exceed three (3) inches in length[.]

In Ohio, courts have found that in cases involving a statute which prohibits persons under indictment for, or convicted of, a crime from acquiring, having, carrying, or using weapons, constructive possession is sufficient to satisfy the possessory element of the statute and actual possession is not necessary. *State* v. *Moncrief* (1980), 69 Ohio App. 2d 51. See *State* v. *Pinkney* (1986), 485 So. 2d 1014, 1016.

In *United States* v. *McCoy* (C.A. 10, 1985), 781 F.2d 168, 171, the Court stated that "[t]he possession of a weapon by a prohibited person * * * may be actual or constructive. * * *"

In *United States* v. *McCoy, supra,* the Court went on to state:

"Other courts have found circumstances similar to those in this case to be sufficient to sustain a jury verdict. In *United States* v. *Smith,* [(5th Cir. 1979), 591 F.2d 1105], the facts closely paralleled those in the instant appeal. A weapon was found in the top drawer of a nightstand near a bed that the defendant used. The court sustained the conviction finding the defendant had sufficient power, dominion and intent over the weapon although there was no evidence of actual possession.

"Like any other fact in issue, possession may be proved by circumstantial as well as direct evidence. The law also recognizes that possession may be either actual or constructive. The defendant had constructive possession if he had the intent and the power to exercise dominion and control over the weapons as charged. [citations omitted]. 'In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed. *United States* v. *Ferg,* 504 F.2d 914, 196-17 (5th Cir. 1974). Smith's dominion and control over his own residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession. The guns were either in plain view or in places where they could hardly have escaped his knowledge.'"

In addition, the *McCoy* court stated:

"In, *United States* v. *Apker,* 705 F.2d 293, 308-09 (8th Cir. 1983) cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed. 2d 229, a weapon was found in a bedroom drawer with clothing of the defendant at the premises where the defendant was occasionally present. The court found the evidence sufficient to support a reasonable

inference of possession. The power or dominion and intention for possession could be reasonably inferred from the facts. [citations omitted]. * * *"

Id. at 171.

In this case, the knives in question were found and located in the defendant's dresser drawer in the couple's bedroom.

Further, the defendant testified that the knives in the drawer were his.

We conclude that there was a sufficient basis for the court to determine that the defendant had the requisite ownership, dominion and control over the knives to constitute "possession" under the terms of defendant's probation.

Assignment of error number two is not well taken.

Finding no error of the trial court prejudicial to the defendant as assigned and argued, we affirm the trial court's judgment.

*Judgment affirmed.*

EVANS, P.J., and BRYANT, J., concur.