OPINION
{¶ 1} Defendant-appellant Robert Clay appeals his conviction and sentence from the Licking County Court of Common Pleas on one count of aggravated possession of drugs. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 1, 2005, the Licking County Grand Jury indicted appellant on one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree. At his arraignment on April 18, 2005, appellant entered a plea of not guilty to the charge.
 {¶ 3} Thereafter, on May 23, 2005, appellant filed a Motion to Suppress. Appellant specifically sought to suppress any statements that he had made to police and contraband seized from his person. A hearing on appellant's Motion to Suppress was held on July 15, 2005. The following testimony was adduced at the hearing.
 {¶ 4} On August 24, 2004, Officer Jonathan Davis of the Village of Granville Police Department was dispatched to the scene of an accident to assist another officer. When Officer Davis arrived on the scene, appellant was sitting in the passenger seat of a vehicle that had been involved in the accident. After another officer on the scene told Officer Davis that the vehicle was going to be impounded since it had no identification plates or information in the glove compartment, Officer Davis asked appellant, who was uninjured, if he was going to need a ride anywhere. Appellant indicated to the officer that he did.
 {¶ 5} Officer Davis then asked appellant if appellant could take a seat in the police cruiser while Officer Davis was securing the crash scene and cleaning up the road. The following testimony was adduced when Officer Davis was asked how appellant responded to his offer to have a seat in the cruiser: "Mr. Clay [appellant] accepted. He stated he needed a ride and it would be fine for him to sit in the back of my patrol car." Suppression Transcript at 8-9. After the officer told appellant that he was going to pat him down for safety purposes before appellant got into the cruiser, as was Officer Davis's standard practice, appellant "stated that was fine." Suppression Transcript at 9.
 {¶ 6} While patting appellant down, the officer felt what he believed to be a bullet in appellant's front right leg pocket. When asked what made him believe the item in appellant's pocket was a bullet, Officer Davis responded as follows:
 {¶ 7} "A. It was — the tip of it was just in the shape of a head of a bullet as the, you know, I would carry on duty. At that point, you know, kind of raised my suspicions, was thinking if this is a bullet, then there's — possibly I need to look, search a little bit harder before I put this gentleman in my car, for a gun." Suppression Transcript at 10.
 {¶ 8} Appellant told Officer Davis that the object was a laser pointer.
 {¶ 9} Officer Davis then told appellant that he was going to pull the object out of appellant's pocket for the officer's own safety. Officer Davis then reached into appellant's pocket and pulled the pocket up since appellant's pants were so tight that Officer Davis was unable to put his hand down into the pocket. According to Officer Davis, "[w]hen I pulled it up and got to the tip of what I believed was a bullet, came — which was actually a laser pointer, but there was two plastic — small plastic bags basically right up against the laser pointer in his back pocket which all came up at the same point when I pulled out the laser pointer." Suppression Transcript at 11. Officer Davis later indicated that he meant to say front pocket. The bags contained what appeared to be methamphetamine. Officer Davis then handcuffed appellant and placed him in the back of the police cruiser. During an inventory search of the car involved in the crash, Officer Davis found methamphetamine.
 {¶ 10} When called on direct as a defense witness, Officer Davis further testified that the laser pointer he pulled out of appellant's pocket was "about the size of a bullet width-wise" and was approximately the length of two .40 caliber bullets together. Suppression Transcript at 46.
 {¶ 11} After the trial court overruled his Motion to Suppress, appellant pleaded no contest to one count of aggravated possession of drugs. As memorialized in a Judgment Entry filed on November 4, 2005, appellant was sentenced to nine (9) months in prison. The trial court, in its entry, ordered that appellant's sentence be served consecutively to appellant's sentence in another Licking County Case.
 {¶ 12} Appellant now raises the following assignment of error on appeal:
 {¶ 13} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
 I {¶ 14} Appellant, in his sole assignment of error, argues that the trial court erred in denying appellant's Motion to Suppress.[1] We disagree.
 {¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; and Statev. Guysinger, supra.
 {¶ 16} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews (1991),57 Ohio St.3d 86, 87, 565 N.E.2d 1271. However, it is well-established a defendant waives his or her Fourth Amendment protection by consenting to a warrantless search. State v. Barnes (1986),25 Ohio St.3d 203, 208, 495 N.E.2d 922, citing Davis v.United States (1946), 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453,Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854, State v. Pi Kappa Alpha Fraternity (1986),23 Ohio St.3d 141, 491 N.E.2d 1129. "The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent."Barnes, supra, at 208-209, citing Schneckloth, supra, andUnited States v. Mendenhall (1980), 446 U.S. 544,100 S.Ct. 1870, 64 L.Ed.2d 497.
 {¶ 17} In the case sub judice, Officer Davis testified that appellant "stated that was fine" after being told that he was going to be patted down. The officer was the only witness to testify at the suppression hearing with respect to the pat-down search. Based on the foregoing, we find that, under the totality of the circumstances, a conclusion is warranted that appellant voluntarily consented to the pat-down search by Officer Davis.
 {¶ 18} Appellant further argues that, even assuming that the pat-down was lawful, "it exceeded the scope to an appropriate frisk and thus constituted an unconstitutional search." We disagree. As is stated above, Officer Davis testified that, when patting appellant down, he felt what he believed to be a bullet in appellant's front pocket. According to Officer Davis, "the tip of it [the object in appellant's pocket] was just in the shape of a head of a bullet . . ." Suppression Transcript at 10.
 {¶ 19} We find that the discovery of what the officer reasonably believed to be a bullet justified a further search to determine whether appellant had, in fact, a bullet on his person and whether, if so, appellant may have been armed. See, for example, State v. Moncrief (1980), 69 Ohio App.2d 51,431 N.E.2d 336 and State v. Lang (April 10, 1986), Cuyahoga App. No. 50218, 1986 WL 4393.[2] We concur with the trial court that, once Officer Davis felt what he believed to be a bullet, it is "untenable" to suggest that he could not further investigate to determine whether or not appellant was armed before giving appellant a ride in the cruiser.
 {¶ 20} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 21} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.
Edwards, J. Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] We note that appellant, in his brief, asserts that the trial court did not file findings of fact and conclusions of law. Pursuant to a Judgment Entry filed on March 7, 2006, this Court remanded the matter for the same and gave the parties time to file supplemental briefs. The trial court's findings of fact and conclusions of law were filed on March 23, 2006. Appellant filed a response to the same on April 20, 2006.
[2] In Lang, the court cited Moncrief, supra., in holding that the discovery of small bullets in the defendant's pants pocket during a pat-down search "justified a further search for small weapons, . . ." Id. at 5.