**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Raymond J. BERRYHILL, Defendant-**
**Appellant.**

**No. 26246.**

United States Court of Appeals,
Ninth Circuit.

Aug. 3, 1971.

Arthur Mabry (argued), Los Angeles, Cal., for defendant-appellant.

Robert L. Meyer, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty. (appeared), David R. Nissen, Chief, Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

Defendant Berryhill was convicted in a court trial of three counts of a thirteen count indictment, Counts III, VI and XIII. He was sentenced to five years under Count III. Concurrent five year sentences were imposed under Counts VI and XIII, ordered to run consecutively with the Count III sentence but with execution suspended and probation for five years.

Count III charged defendant with the unlawful possession on February 16, 1967,[1] in Los Angeles County of the contents of a letter stolen from the mail which had been mailed by one Kenje Kawa in a collection box at Shenandoah and Reynier Streets, Los Angeles, California, defendant knowing that the contents of the letter had been stolen.

---

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

1. The delay in trial is the consequence of defendant's successful exercise of a post-conviction remedy after an earlier conviction.

Defendant contends that the evidence was insufficient to support the conviction; specifically that there was inadequate proof of mailing and that the contents of the letter had been stolen from the mail.

Mr. Kawa testified that on February 14, 1967, he was paying bills and wrote fourteen checks which were placed in sealed, stamped envelopes addressed to the respective creditors. He used a date stamp on the checks. He inadvertently tore an extra blank check form (Ex. 1) from his check book and placed it in one of the envelopes. He didn't know which one. Kawa deposited the letters in a collection box at the corner of Reynier and Shenandoah Streets in Los Angeles.

At approximately the same time, the exact date is uncertain, a sealed letter containing a check drawn on the Westchester Branch of the Bank of America by one Edythe A. Karon to the Regents, University of California, was deposited in the same mail box. This check ultimately was received by the addressee.

On February 16, 1967, a co-defendant of Berryhill, one Carol Nutter, presented Kawa's check form at the Westchester Branch of the Bank of America. The check form had been filled out to direct the payment to Edythe A. Karon of the sum of $300. It bore the purported, but forged, signature of Kenji Kawa, as maker, and the purported, but forged, endorsement of Edythe A. Karon, as payee. Carol Nutter posed as Edythe Karon in presenting the check. When the teller left the service counter to verify the endorsement, Nutter, a white woman, hurried from the bank and entered a car driven by a black man. Defendant is a Negro. A bystander recorded the license number, which identified a vehicle commonly used by defendant. Identifiable fingerprints of defendant and Nutter were found on the forged Kawa-Karon check left with the teller. Defendant was proved to be a person who had access to master keys for street-corner mail boxes which had been stolen in an earlier post office burglary.

Kawa testified that he had inadvertently torn off a blank check form on February 14, and identified the forged Kawa-Karon check (Ex. 1) as his regular check form and also by the date stamp which he had placed on it. Other evidence proved defendant's connection with other thefts of mail, at about the same time, from other street-corner mail boxes. (See summary of evidence pertaining to Counts VI and XIII, infra.)

The evidence recited is adequate, in our opinion, to persuade a reasonable person that Kawa did, in fact, inadvertently mail the blank check form in one of the fourteen envelopes, that a theft from the street-corner mail box occurred, and that defendant engineered a sophisticated plan to use the fruits of the theft to swindle the bank by a forged instrument, covering his tracks by redepositing for mail delivery the genuine Kawa and Karon checks after they had served his purposes as exemplars for forgery. Defendant's fingerprint and other circumstances affirmed defendant's possession of the document recently after mailing and invoked the inference of knowledge of its stolen character. Cotton v. United States, 409 F.2d 1049 (10th Cir. 1969); Cf. United States v. Birnstihl, 414 F.2d 368 (9th Cir. 1971). "The evidence, considered most favorably to the government was such as to permit a rational conclusion by the jury (court) that the accused was guilty beyond a reasonable doubt." United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969).

The attack on the convictions under Counts VI and XIII of the indictment rests upon an allegedly illegal search and seizure. The evidence showed that on March 11, 1967, Mrs. Dorothy Fineman mailed a check to the California Franchise Tax Board (Count VI) in the mail box at the corner of Plymouth and Melrose Streets, and witnesses testified that on or about March 19, 1967, they had variously deposited for mailing ten other pieces of mail in mail boxes located at Jefferson and Cypress Streets, Overcrest and Northridge Streets, Northridge and

Verdun Streets, and Sixth Avenue and Jefferson Streets.

On March 20, 1967, these same pieces of mail were found in the possession of Mrs. Clarice Berryhill, defendant's wife, under the following circumstances. The postal inspectors had obtained a warrant for the arrest of defendant for the Kawa check theft and were looking for him. The arresting officers had knowledge of defendant's prior arrest history, including information that he usually had weapons close to him. Defendant and his wife, the former driving, the latter a front-seat passenger, were located in an automobile and were stopped to effectuate the arrest at a busy intersection. The arrest was made with drawn pistols covering both occupants of the car, defendant was required to disembark and spread-eagle against the car where he was searched for weapons, handcuffed and taken to the officer's car by Inspector Loffler. Inspector Michaelson observed that Mrs. Berryhill was clutching a handbag with a paper sack protruding from the top. The paper sack was too small for its contents and in the top of the sack, the officer saw what appeared to be several envelopes. Michaelson, covering Mrs. Berryhill with his firearm, searched the handbag for weapons and found the mail matter which is the subject of Counts VI and XIII. On interrogation, defendant said, "Look here, officer, the mail in her purse is mine. I told her to put it in there and she does what I say because she is my wife."

Defendant relied upon Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), in objecting to the search as too extensive under the circumstances and thus illegal. While *Chimel* is not retroactive (Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, April 5, 1971) and is inapplicable here, we nevertheless see but slight relevancy of its principles to this situation. *Chimel* contains dicta affirming Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and its progeny (395 U.S. at 764, 89 S.

Ct. 2034, 23 L.Ed.2d 685). The holding of the case relates to the scope of a valid search after a lawful arrest in defendant's home, apartment or dwelling. Cf. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, June 21, 1971. In our view this case more properly concerns the applicability of the law governing automobile searches incident to a lawful arrest and the reasonableness of a limited search of other occupants of the vehicle for weapons.

Berryhill was arrested pursuant to a warrant. The legality of his arrest is not questioned. While the officers had no purpose in arresting Mrs. Berryhill initially, she was, in fact, arrested after discovery of the stolen mail matter in her handbag during the search for weapons.

The law seems to be well settled that when the driver of a motor vehicle is lawfully arrested in the vehicle, the arresting officer has the right to search the vehicle contemporaneously with and as an incident to the lawful arrest, the vehicle being a thing "under the accused's immediate control." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963). The contemporaneous search may be for weapons or for fruits or implements of the crime, Preston, *supra*, at 367, 84 S.Ct. 881, 11 L.Ed.2d 777, or for evidence relevant to the crime. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The reasonableness of such a search arises from the mobility of the vehicle and the likelihood that it may be moved beyond the jurisdiction or secreted or the evidence destroyed before a search warrant can be obtained. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The High Court, so far as we are advised, has not to this date engaged in any nice distinctions regarding the scope of the vehicular search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). If the justification for the search is that it is incident to a lawful arrest, the limitation is that it must be contemporaneous

with the arrest, the situation here. *Preston, supra*; Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

The search incident to Berryhill's arrest was for weapons and there was a probability that fruits or implements of the crime for which the warrant was issued might be found in the vehicle, the same car that had been used in the transaction involving the Kawa-Karon check.

In addition to the vehicular search, we are here concerned with the right to search another occupant of the vehicle, Mrs. Clarice Berryhill, who was clutching the handbag in which the stolen mail matter described in Counts VI and XIII was found. The fact that envelopes were observed protruding from the top of the paper sack might arguably have supported the reasonableness of the search, but the arresting officer described it as purely a search for weapons. And the lawful arrest of Berryhill cannot legalize a personal search of a companion for evidence against her simply because she was there. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The Supreme Court, however, has clarified the right of peace officers to protect themselves from the reasonably anticipated possibility of assault. In Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), the Court affirmed the right of a limited search "to assure * * * that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him" despite the absence of probable cause for an arrest. We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "pat-down" reasonably necessary to give assurance that they are unarmed.

It should be noted that we are not here concerned with the admissibility of the seized evidence against Mrs. Berryhill. That was the *Di Re* case, *supra*, in which an envelope containing counterfeit coupons found in the lining of defendant's coat was used in evidence against him. That was not a limited search for weapons for the protection of the arresting officer but a thorough personal search of a companion of one who was lawfully arrested and the Court concluded: "We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." The distinction made in *Terry* between a limited search for weapons and a thorough personal search of a companion of the criminal, cogently distinguishes *Di Re* from the instant case. Here the officers had knowledge that Berryhill frequently had a weapon available, and his wife's handbag was reasonably suspect as the depository of such a weapon. The evidence shows that the search of Mrs. Berryhill did not extend beyond the examination of the bag. Cf. Sibron v. New York, 392 U.S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968).

Berryhill cannot complain of a violation of Mrs. Berryhill's personal rights under the Fourth Amendment, Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Diaz-Rosendo v. United States, 357 F.2d 124 (9th Cir. 1966), if we assume the case to be one where Mrs. Berryhill's right to personal security was unconstitutionally invaded. On the other hand, if we accept Berryhill's assertion of ownership of the seized mail matter and treat Mrs. Berryhill's handbag as the temporary depository of his property in

the vehicle, the search and seizure were justified as incident to the lawful arrest of defendant.

The concurrent sentences imposed on Counts VI and XIII obviate consideration of the contention that the Counts are duplicitous.

Affirmed.