COMMONWEALTH *vs.* WING NG.

Suffolk. March 6, 1995. - May 4, 1995.

Present: WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Threshold
    police inquiry, Protective frisk.

This court concluded that, under both the Fourth Amendment to the
    United States Constitution and art. 14 of the Massachusetts Declara-
    tion of Rights, the frisking by a police officer of a person in the com-
    pany of another who has been lawfully arrested is constitutionally per-
    missible if the officer can point to specific, articulable facts that
    warrant a reasonable suspicion that the particular individual might be
    armed and a potential threat to the safety of the officer or others. [236-
    238]

In the circumstances of police officers' arrest pursuant to a warrant of a
    man identified as a participant in a recent robbery and armed assault in
    a dwelling, the officers properly conducted a pat frisk of the driver of
    the car in which the suspect was traveling where the police had a rea-
    sonable concern for their safety based on specific and articulable facts:
    the handgun seized as a result of the pat frisk was properly admissible.
    [239-241]

COMPLAINT received and sworn to in the Boston Municipal
Court Department on February 4, 1992.

A motion to suppress evidence was heard by *Paul L. Mc-
Gill*, J., sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*David Duncan* (*Norman S. Zalkind* with him) for the
defendant.

*John P. Zanini*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J. This case, here on further appellate review,
concerns the circumstances in which a companion of a person

who is arrested pursuant to a warrant lawfully may be subjected to a "pat frisk." The Appeals Court rejected the idea that the police have an automatic right to pat frisk a companion in the company of one who has been lawfully arrested. *Commonwealth* v. *Wing Ng*, 37 Mass. App. Ct. 283, 287 (1994). It concluded that opinions favoring such a bright-line rule were not consistent with the Fourth Amendment principles of *Terry* v. *Ohio*, 392 U.S. 1 (1968), under which the frisk of a person is constitutionally permissible if the arresting officer can point to specific, articulable facts that warrant a reasonable suspicion that the particular individual might be armed and a potential threat to the safety of the officer or others.[1] *Id.* at 21, 27. We agree with the Ap-

---

[1]The automatic right to "pat down" a companion of a person arrested, if the companion is capable of assaulting the arresting officer, was expressed in *United States* v. *Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971), as the Appeals Court noted. *Commonwealth* v. *Wing Ng*, 37 Mass. App. Ct. 283, 286-287 (1994). Although the Commonwealth argues in its brief to this court on further appellate review that we should adopt such a rule, it made no such argument in its brief in the Appeals Court. The Appeals Court raised the application of the *Berryhill* rule on its own.

A number of courts have approved the *Berryhill* approach. See *United States* v. *Simmons*, 567 F.2d 314, 319 (7th Cir. 1977) (approving of *Berryhill* "where a search is limited to a 'pat down' "); *United States* v. *Poms*, 484 F.2d 919, 922 (4th Cir. 1973) ("Since we agree that [all companions may be searched under *Berryhill*], we see no reason why officers may not similarly engage in a limited search for weapons of a known companion of an arrestee, especially one reported to be armed at all times, who walks in on the original arrest by sheer happenstance"); *United States* v. *Del Toro*, 464 F.2d 520, 521 (2d Cir. 1972) (holding permissible "pat-down" of sole companion of narcotics dealer confronted late at night on street under the reasoning of *Terry* v. *Ohio*, and noting that, although "appellee was not uncooperative, and . . . the police were present in force, it would nevertheless be unreasonable to expect them to expose themselves to a violent escape attempt, however futile, when the limited intrusion of a pat-down would promptly defuse what officers experienced in narcotics enforcement perceived as a potentially explosive situation," citing *Berryhill*); *State* v. *Clevidence*, 153 Ariz. 295, 298 (Ct. App. 1987) ("The right to a limited search for weapons extends to a suspected criminal's companions at the time of arrest"); *Lewis* v. *United States*, 399 A.2d 559, 561 (D.C. 1979) ("The fact that his companion had just been arrested for unlawful possession of a firearm is a particularly compelling justification for the frisk of appellant"); *People* v. *Myers*, 246 Ill. App. 3d 542, 545-546 (1993) ("While a police officer may not search a person merely because he is with

peals Court's conclusion, which is supported by opinions that reject an automatic right to search a companion.[2] We add that, under art. 14 of the Massachusetts Declaration of Rights, we reach the same conclusion as an independent matter. See *Eldridge* v. *State*, 848 P.2d 834, 838 (Alaska Ct. App. 1993) (rejecting automatic companion rule under Alaska Constitution).

.

someone who has been arrested, the officer may conduct a pat-down of the arrested person's companions to protect himself or others"); *State* v. *Moncrief*, 69 Ohio App. 2d 51, 59 (1980) ("The right to frisk for the limited purpose of searching for weapons has been extended to other occupants of a stopped automobile").

[2]The Appeals Court cited opinions that have declined to follow the *Berryhill* rule. See *United States* v. *Flett*, 806 F.2d 823, 827 (8th Cir. 1986) ("Applying the totality of the circumstances analysis to the facts before us, the record supports the finding that the actions taken by Deputy Adams fall within the guidelines established by *Terry*"); *United States* v. *Bell*, 762 F.2d 495, 498 (6th Cir.) (upholding search as reasonable; "We decline to adopt an 'automatic companion' rule, as we have serious reservations about the constitutionality of such a result under existing precedent"), cert. denied, 474 U.S. 853 (1985). See also *State* v. *Eggersgluess*, 483 N.W.2d 94, 98 (Minn. Ct. App. 1992).

Other courts have not stated their views of the *Berryhill* rule. See, e.g., *United States* v. *McKie*, 951 F.2d 399, 402 (D.C. Cir. 1991) ("This is not, however, a 'mere propinquity' case and we need not take a position on the 'automatic companion' rule to decide it"); *United States* v. *Tharpe*, 536 F.2d 1098, 1101 (5th Cir. 1976) ("We need not go so far as the Ninth Circuit's rule of general justification conferring categorical reasonableness upon searches of all companions of the arrestee as being incident to the arrest of the other. [Citing *Berryhill*.] We simply hold that where there was good reason for an officer to apprehend that he was in a position of real danger from companions of an arrestee, that officer's pat-down search is compatible with *Terry*").

There is language in opinions of the Supreme Court, concerning factually distinguishable circumstances, that casts doubt on the propriety of the bright-line *Berryhill* rule. See *Ybarra* v. *Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person"); *United States* v. *Di Re*, 332 U.S. 581, 587 (1948) ("We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled"). See also *Maryland* v. *Buie*, 494 U.S. 325, 337 (1990). The Supreme Court has not taken a position on the propriety of the *Berryhill* rule.

The question then is whether, in the circumstances of this case, the pat frisk of the defendant, which disclosed an unlicensed handgun, was justified by the standards of *Terry* v. *Ohio.* We have not applied a different standard for State constitutional purposes. See *Commonwealth* v. *Fraser,* 410 Mass. 541, 543 n.3 (1991). The motion judge concluded that the "pat down" search of the defendant was not justified and allowed the defendant's motion to suppress. A Justice of this court allowed the Commonwealth's application for leave to take an interlocutory appeal. The Appeals Court accepted the judge's findings of basic facts but concluded that the circumstances justified the pat frisk. *Commonwealth* v. *Wing Ng, supra* at 283, 289. We agree with the Appeal Court's conclusion.

The defendant, charged in the Boston Municipal Court with unlawful possession of a firearm (G. L. c. 269, § 10 [*a*] [1992 ed.]), moved to suppress the gun. A judge sitting by statutory designation in the jury session of that court made findings of fact on the defendant's motion to suppress. On January 26, 1992, four Asian males conducted an armed invasion of a home in Randolph. They tied up and viciously beat occupants of the home and stole a gun. Eight days later, on February 3, a confidential informant told a special agent of the United States Immigration and Naturalization Service (INS) that a John Ng had participated in the armed home invasion. A victim of the invasion identified a photograph of John Ng as that of one of the participants in the crime. The police promptly obtained a warrant for the arrest of John Ng. Later that day, the confidential informant told the INS agent that John Ng could be located at a restaurant in Cambridge and that he was with his brother, Wing Ng, and other men, traveling in a silver Subaru. The agent, accompanied by another INS agent, saw a man whom he believed to be John Ng leave the restaurant with other Asian males and females. The INS agents followed the Subaru to a restaurant on Boylston Street in Boston. About 11:30 P.M., two Randolph police officers and between eight to ten Boston police officers joined the INS agents. One officer confirmed that

John Ng was in the restaurant. The police decided that on cue they would converge on the motor vehicle only after John Ng had entered it.

At about 12:50 A.M., on February 4, the group left the restaurant and entered the vehicle. The cue was given; the police approached with guns drawn; and all the vehicle's occupants were removed. The defendant had been in the driver's seat and had made no furtive gestures before or after his removal from the vehicle. The lead INS agent who, with police officers, had removed the defendant from the vehicle, asked him for his name and place of birth. The defendant said that he was Wing Ng from Hong Kong. A police officer put the defendant face down on the ground, conducted a pat frisk of him, and found a semiautomatic handgun in his belt. This entire process of removal and pat frisk took approximately twenty seconds. John Ng, the subject of the arrest warrant, had been in the front passenger seat.

The defendant agrees that the police officers were justified in approaching the vehicle to identify John Ng, if they could, and to execute the arrest warrant. They were also justified in removing the occupants from the vehicle. The motion judge concluded that the pat frisk was not warranted, however, because the defendant immediately had identified himself and had made no threatening movements. The motion judge construed what the police knew to be only three facts concerning the defendant: (1) he was John Ng's brother, (2) he was with his brother about one week after the home invasion, and (3) recently he had been in two restaurants with his brother. These, he said, were not specific and articulable facts that would support a reasonable conclusion that the defendant might be armed and dangerous.

The Appeals Court concluded, we think correctly, that there were other specific and articulable facts that, taken with the facts that the motion judge acknowledged, could cause a reasonable police officer to suspect that the defendant might be armed and a threat to the safety of the officer or others. The crime for which John Ng was arrested was a violent felony. The home invaders had been armed and had

stolen a weapon. The defendant was an Asian male, the brother of John Ng, and on seemingly good terms with his brother. The prospect was apparent that the defendant might have been one of the home invaders, might be armed, and might be capable of violence. The confrontation took place where the safety of the public was a relevant concern. On the other hand, the police had no knowledge that the defendant had participated in the home invasion and there was a substantial police presence.

The question is close. Certainly this is not a simple case of the search of the companion of a person who is arrested. The police were acting lawfully to arrest a man for committing a violent crime. The crime was committed by armed men. The inference was reasonable that the defendant might have been one of those armed men and that, if he was, he might still be armed. The police were entitled to be concerned for their safety in the circumstances of this case, and that concern was reasonable and based on specific and articulable facts.

*Order allowing motion*
*to suppress reversed.*