Keith A. OWENS, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2006–SC–000037–MR.

Supreme Court of Kentucky.

Aug. 27, 2009.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

The United States Supreme Court has remanded this case to us for consideration in light of its recent opinion in *Arizona v. Gant*,[1] rendered after the issuance of our original opinion in this case.[2] This revised opinion contains our analysis of *Gant*, but we have concluded that *Gant* does not affect the ultimate outcome of this case.

This appeal requires us to decide whether a police officer working a traffic stop may exercise discretion to conduct a pat-down search for weapons of a vehicle's passenger, who exited the vehicle to accommodate a search of the vehicle incident to the driver's arrest, even if the officer has no independent suspicion that the passenger is guilty of criminal conduct. Ana-

1. —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (April 21, 2009).

2. Our original opinion was rendered January 24, 2008, and may be found at 244 S.W.3d 83

(Ky.2008). The United States Supreme Court's order remanding this matter to us may be found at —— U.S. ——, 129 S.Ct. 2155, 173 L.Ed.2d 1152 (May 4, 2009).

lyzing the automatic companion rule as a matter of first impression in Kentucky, we conclude that officer safety and public safety demand that the police officer have discretion to frisk the passenger under these circumstances. This conclusion leads us to hold that the trial court properly denied the passenger's motion to suppress evidence of contraband seized from him and to affirm his conviction.

## I. FACTUAL AND PROCEDURAL HISTORY.

Awaiting trial on charges of possession of marijuana, first-degree possession of a controlled substance, and of being a first-degree persistent felony offender (PFO 1), Keith Owens filed a pretrial motion to suppress evidence of illegal drugs seized during an allegedly improper search of his person. This prompted the trial court to hold a brief suppression hearing at which the Commonwealth presented the testimony of the arresting officer. Owens testified at the hearing in his own behalf.

According to the officer's testimony, he stopped a vehicle driven by Chris Thornton because he believed—correctly it turned out—that Thornton's driver's license had been suspended. Thornton was arrested on that charge. Once outside the vehicle, Thornton was searched incident to arrest. The search yielded a suspected crack pipe, and Thornton was placed in the police cruiser. Owens was a front-seat passenger in the vehicle.[3]

The officer decided to search the vehicle at the scene incident to Thornton's arrest and directed Owens to step out of the vehicle. The officer asked Owens if he had any weapons. The officer testified that Owens stated that he had nothing to hide and began removing money from his pockets. The officer saw a baggie fall out when Owens pulled money from one of his pockets. That baggie, which the officer testified he immediately suspected contained contraband as it landed at Owens's feet, contained a marijuana cigarette, some loose marijuana, and several pills. Two of the pills were later determined to contain methamphetamine, and three of them were later determined to contain ecstasy. The officer testified at the suppression hearing that Owens voluntarily emptied his own pockets and that he had fully completed a *Terry*[4] pat-down when Owens emptied his pockets. But the officer also testified, seemingly contradictorily, that Owens began removing money from his pockets while the officer was conducting the pat-down. A later search of the vehicle and Owens's person revealed no other contraband.

At the suppression hearing, Owens's version of the events differed slightly from the officer's. Owens did not dispute the officer's testimony about the stop of the vehicle and Thornton's arrest. But Owens testified that the officer reached into his pockets to remove the money. Owens also denied that he possessed the baggie containing the illegal drugs.

The trial court denied the motion to suppress. At trial, the jury found Owens guilty of all charges and recommended a sentence of twelve months with a $500 fine for the possession of marijuana conviction, and a twenty-year sentence for the PFO 1 conviction.[5] Owens was sentenced in ac-

---

3. Apparently, the vehicle was actually Owens's; but Owens did not want to drive because he had taken prescription codeine for bronchitis.

4. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

5. Neither the jury nor the trial court assessed a separate penalty for the possession of a controlled substance conviction. Owens does

cordance with the jury's recommendation,[6] after which he filed this matter-of-right appeal.[7]

## II. ANALYSIS.

Owens does not contest the stop of the vehicle. Nor does he contest the arrest and eventual search of Thornton. Owens contends that the officers overstepped constitutional bounds when they frisked him for weapons. We disagree.

■ Motions to suppress are governed by Kentucky Rules of Criminal Procedure (RCr) 9.78. That rule provides that a court facing a motion to suppress "shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling" When reviewing an order on a motion to suppress, the trial court's findings of fact are "conclusive" if they are "supported by substantial evidence."[8] Using those facts,

this Court then reviews de novo the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.[9]

■ Under our settled jurisprudence, "[i]t is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant."[10] Although the validity of the stop, arrest, and search of Thornton is not at issue in this appeal, we must address the rationale for that stop and search because the propriety of the frisk of Owens depends upon the preceding search and arrest of Thornton.

■ The officer had a right to stop the vehicle based on his reasonable suspicion that Thornton's driver's license had expired.[11] And the officer had the authority to arrest Thornton[12] and to conduct a search of Thornton incident to that arrest.[13] Once Thornton was lawfully arrested, the officer had the authority under the

---

not claim error in the failure to assess a separate penalty for the underlying controlled substance conviction.

6. The final judgment makes no mention of the possession of marijuana conviction.

7. See Ky. Const. § 110(2)(b).

8. RCr 9.78.

9. See Adcock v. Commonwealth, 967 S.W.2d 6, 8 (Ky.1998) ("When the findings of fact are supported by substantial evidence, as we conclude they are herein, the question necessarily becomes, 'whether the rule of law as applied to the established facts is or is not violated[,]'" citing Ornelas v. United States, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), in which the United States Supreme Court stated that the trial court's determination of reasonable suspicion or probable cause was subject to de novo review even

though findings of fact were supported by substantial evidence.).

10. Cook v. Commonwealth, 826 S.W.2d 329, 331 (Ky.1992).

11. See, e.g., Collins v. Commonwealth, 142 S.W.3d 113, 115 (Ky.2004) (citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)).

12. Kentucky Revised Statutes (KRS) 186.620(2) provides that a person shall not operate a motor vehicle on a suspended license. KRS 186.990(3) provides that a person who violates KRS 186.620 commits a Class B misdemeanor. KRS 431.005(1) authorizes a peace officer to arrest a person without a warrant if that person has committed a misdemeanor in the officer's presence.

13. See, e.g., Rainey v. Commonwealth, 197 S.W.3d 89, 92 (Ky.2006) (plurality opinion), cert. denied, 549 U.S. 1117, 127 S.Ct. 1005,

facts of this case to search the passenger compartment of the vehicle Thornton had recently driven.

■ The Supreme Court previously afforded officers virtual carte blanche to search an automobile incident to the arrest of a recent occupant of a vehicle, holding that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." [14] This carte blanche has been greatly reduced by *Gant*, however. According to the new, far more restrictive rule expressed in *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." [15] Otherwise, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." [16]

This narrowing of the automobile search requirement will undoubtedly affect the propriety of the automobile searches inci-

dent to arrest in a great number of cases. But this case is not one of them.

Although Thornton was initially stopped and arrested because of his suspended driver's license, the search of Thornton incident to that arrest revealed the presence of a suspected crack pipe. His possession of the suspected crack pipe gave rise to another reason for Thornton to be arrested. It was then reasonable for the arresting officer to believe that the vehicle Thornton was driving contained evidence of the offense of the de facto second offense giving rise to the arrest (*i.e.*, possession or trafficking in drugs). The search of the vehicle, therefore, was permissible, both before [17] and after *Gant*. [18]

■ And an officer has the authority to order a passenger to exit a vehicle pending completion of a minor traffic stop. [19] So it logically follows that an officer may order a passenger to exit a vehicle while that vehicle is searched incident to the lawful arrest of the driver. It appears that every important action taken up to the point where Owens was frisked was constitutionally permissible.

■ Here we arrive at the crux of this case: may an officer conduct a pat-down search for weapons of a passenger of a

---

166 L.Ed.2d 713 (2007) (search incident to arrest is exception to warrant requirement).

**14.** *Thornton v. United States*, 541 U.S. 615, 623, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004).

**15.** 129 S.Ct. at 1723.

**16.** *Id.* at 1723–24.

**17.** *Thornton*, 541 U.S. at 623, 124 S.Ct. 2127.

**18.** *Gant*, 129 S.Ct. at 1714 ("[W]e also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.").

**19.** *Maryland v. Wilson*, 519 U.S. 408, 414–15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ("In

summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). At the suppression hearing, the officer testified that Owens voluntarily exited the vehicle; but Owens testified that the officer asked him to exit the vehicle. Since the officer had the authority to order Owens to exit the vehicle, it is, for purposes of this case, immaterial whether Owens voluntarily exited the vehicle or whether the officer ordered him to do so.

vehicle when the driver has been arrested and the driver possessed illegal narcotics even if there is no independent suspicion that the passenger is guilty of criminal conduct?[20] This precise factual scenario appears to be a matter of first impression in Kentucky. So we turn to other courts for guidance.

■ Two schools of thought have emerged around this subject. One, known as the automatic companion rule, holds that "[a]ll companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed."[21] Numerous state and federal courts have either expressly adopted the automatic companion rule or have issued decisions that seem to follow its contours.[22] The other school of thought, also used by several courts, is the totality of the circumstances rule, in which the propriety of the frisk is determined considering the totality of the circumstances.[23] Some courts that have rejected the automatic companion rule appear to believe that it improperly creates a guilt-by-association scenario and obliterates the requirement that an officer have a particularized, reasonable, articulable suspicion that a person is engaging in criminal activity or is dangerous before

**20.** The officer did not testify that Owens was acting nervous or was fidgeting with anything in his pockets; the officer did not testify that he conducted the frisk because he feared for his safety, either because he was aware of Owens's lengthy criminal history or because Owens was wearing baggy clothes that could have easily concealed a weapon; and the officer did not testify that the stop of the vehicle occurred in a high crime area. In short, nothing of substance appears in the record to justify the frisk of Owens except for the inarguable fact that he was a passenger in a vehicle driven by someone who possessed a crack pipe. Although further questioning may have revealed that the officer did have, in fact, articulable and independent suspicions that Owens was armed or dangerous, those reasons were not explicitly brought forth during the brief suppression hearing.

**21.** *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir.1971).

**22.** *See, e.g., United States v. Simmons*, 567 F.2d 314, 319 (7th Cir.1977) (holding that the automatic companion rule as expressed in *Berryhill* was insufficient to justify a full-blown search of an arrestee's companion, but the rationale "may be sufficient where a search is limited to a 'pat down . . . .' "); *United States v. Poms*, 484 F.2d 919, 922 (4th Cir.1973) (voicing agreement with *Berryhill* ); *State v. Clevidence*, 153 Ariz. 295, 736 P.2d 379, 382 (1987) (*citing Berryhill* with approv-

al for proposition that "[t]he right to a limited search for weapons extends to a suspected criminal's companions at the time of arrest."); *People v. Myers*, 246 Ill.App.3d 542, 186 Ill.Dec. 443, 616 N.E.2d 633, 636 (1993) (*citing Berryhill* with approval and holding that "[w]hile a police officer may not search a person merely because he is with someone who has been arrested, the officer may conduct a pat-down of the arrested person's companions to protect himself or others."); *State v. Moncrief*, 69 Ohio App.2d 51, 431 N.E.2d 336, 342 (1980) (*citing Berryhill* with approval); *Lewis v. United States*, 399 A.2d 559, 562 (D.C.1979) (*citing Berryhill* with approval). *Perry v. State*, 927 P.2d 1158, 1163–64 (Wyo. 1996) (*citing Berryhill* with approval and adopting automatic companion rule).

**23.** *See, e.g., United States v. Bell*, 762 F.2d 495, 499 (6th Cir.1985) (rejecting adoption of automatic companion rule); *Eldridge v. State*, 848 P.2d 834, 837–38 (Alaska Ct.App.1993) (same); *Commonwealth v. Ng*, 420 Mass. 236, 649 N.E.2d 157, 158 (1995) (same); *State v. Eggersgluess*, 483 N.W.2d 94, 98 (Minn.Ct. App.1992); *United States v. Flett*, 806 F.2d 823, 827 (8th Cir.1986) (same). We appear to have utilized the totality of the circumstances test in regards to judging the propriety of *Terry* stops. *See, e.g., Commonwealth v. Priddy*, 184 S.W.3d 501, 511 (Ky.2005), *cert. denied*, 549 U.S. 980, 127 S.Ct. 444, 166 L.Ed.2d 316 (2006). However, we have not directly opined on the merits, or lack thereof, of the automatic companion rule.

subjecting that person to a frisk.[24] Legal scholars have also entered the debate.[25]

We have given careful analysis to the well-reasoned thoughts expressed by both proponents and opponents of the automatic companion rule. We have decided to adopt the automatic companion rule in the narrow realm of cases involving facts similar to the case at hand.

We find it illogical that rejecting the automatic companion rule would lead to scenarios whereby an officer could search a vehicle incident to an arrest of the driver, which necessitates removing any passengers from the vehicle, but could not take the additional protective step of conducting a *Terry* pat-down for weapons of those passengers (unless the officer had independent reasons to suspect the passengers of being dangerous or of being involved in criminal activity). Limiting the right to a make a protective search would

increase the chances that an officer could be harmed by a passenger who had been carrying a concealed weapon.[26] This "compelling"[27] concern for officer safety is magnified by the fact that this case, like so many others, involves illegal narcotics, thereby bringing into play "[t]he indisputable nexus between drugs and guns[, which] presumptively creates a reasonable suspicion of danger to the officer."[28] Indeed, even the United States Supreme Court has recognized the safety of officers as a matter of paramount importance.[29] And given the small space inside a vehicle and the general presumption that one voluntarily chooses one's traveling companions for the furtherance of a common goal or mission,[30] it would be unreasonable and dangerous for an officer not to be concerned about his or her safety with regard to the passengers of a vehicle after the driver has been

---

**24.** *See, e.g., Eldridge,* 848 P.2d at 838; *Ng,* 649 N.E.2d at 157.

**25.** *See* Kristi Michelle Bellamy, *The "Automatic Companion" Rule and Its Unconstitutional Application to the Frisk of Car Passengers,* 27 Am.J.Crim.L. 217 (2000); David E. Edwards, Suzette M. Nanovic, Francis M. O'Connell & Laura A. Yustak, Case Comment, *Criminal Law—United States v. Bell: Rejecting Guilt By Association in Search and Seizure Cases,* 61 Notre Dame L.Rev. 258 (1986). John. J. O'Shea, *The Automatic Companion Rule: A Bright Line Standard for the Terry Frisk of an Arrestee's Companion,* 62 Notre Dame L.Rev. 751 (1987).

**26.** *Berryhill,* 445 F.2d at 1193 ("We think that Terry recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. *It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance.*") (emphasis added).

**27.** *Perry,* 927 P.2d at 1164 ("The concern of these courts [who have adopted the automatic companion rule] for officer safety is a compelling justification.").

**28.** *United States v. Sakyi,* 160 F.3d 164, 169 (4th Cir.1998).

**29.** *See Terry,* 392 U.S. at 23–24, 88 S.Ct. 1868 ("Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives."). *See also Sakyi,* 160 F.3d at 168 ("All of these cases recognize generally that every traffic stop poses a meaningful level of risk to the safety of police officers.").

**30.** That general presumption of voluntary traveling together for the furtherance of a common purpose is heightened in this case by the fact that Owens asked Thornton to drive Owens's vehicle.

arrested.[31]

Although a *Terry* pat-down may be considered an additional intrusion into the privacy of a passenger, any additional intrusion is minimal—since the passengers presumably have already been ordered to exit the vehicle—and is more than counterbalanced by the need to protect both the officers and any innocent bystanders from harm.[32] After all, a protective frisk of a passenger by an officer is just that: a mechanism designed solely to protect the officers and any bystanders, not an offensive move designed to result in prosecution of a passenger.[33] So, since the officer's motive in conducting the frisk (safety) is not improper or designed to circumvent the protections afforded by the Fourth Amendment, the basic purpose of the exclusionary rule—deterring police misconduct[34]—would not be furthered by deny-

ing the officer the right to conduct a brief *Terry* frisk of a passenger in a vehicle whose driver has just been arrested. In other words, penalizing the officer for conducting what a court later determines to have been an improper frisk will have absolutely no practical deterrent effect, meaning that suppression of the evidence will not further the aims of the exclusionary rule.[35]

Additionally, adoption of the automatic companion rule provides needed bright line guidance to the bench, bar, law enforcement community, and citizens across the Commonwealth as to what is constitutionally permissible in cases such as the one at hand. The United States Supreme Court, along with commentators, has endorsed bright line rules in dealing with other Fourth Amendment concerns.[36]

---

**31.** *Sakyi,* 160 F.3d at 169 ("They [passengers of a vehicle] are in the restricted space of the vehicle presumably by choice and presumably on a common mission.").

**32.** *See* O'Shea, 62 Notre Dame L.Rev. at 759 (citing statistics regarding accidental shootings by Chicago police and arguing that adoption of automatic companion rule would reduce those shootings while simultaneously protecting the police).

**33.** *See id.* at 754.

**34.** *See, e.g., Parks v. Commonwealth,* 192 S.W.3d 318, 335 (Ky.2006) ("The exclusionary rule is designed to deter police misconduct.").

**35.** O'Shea, 62 Notre Dame L.Rev. at 753 ("The officer who fears for his safety is not concerned with the admissibility of evidence found pursuant to a pat-down search. Instead, the officer is protecting himself and those around him by conducting a pat-down search for weapons."); *Terry,* 392 U.S. at 14–15, 88 S.Ct. 1868 ("Regardless of how effective the rule may be where obtaining convictions is an important objective of the police, it is powerless to deter invasions of constitutionally guaranteed rights where the police either

have no interest in prosecuting or are willing to forgo successful prosecution in the interest of serving some other goal.... Yet a rigid and unthinking application of the exclusionary rule, in futile protest against practices which it can never be used effectively to control, may exact a high toll in human injury and frustration of efforts to prevent crime.") (internal footnote omitted).

**36.** *See, e.g., New York v. Belton,* 453 U.S. 454, 459–60, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ("When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority."); LaFave, *"Case–By–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 S.Ct.Rev. 127, 141 ("Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the

We are not unmindful of the powerful protections afforded by the Fourth Amendment. In no sense should our holding in this case be taken as a license for law enforcement officers to believe that all frisks of all persons are always proper. We also reject any implication that our holding creates a "guilt by association" mentality. To the contrary, our holding is simply an avenue to protect the officer working at the point of contact and the public. Toward that end, our holding is a limited and narrow exception to the exclusionary rule, designed to apply only in situations in which the driver of a vehicle has been lawfully arrested and the passengers of the vehicle have been lawfully expelled in preparation for a lawful search of the vehicle. Only in those limited circumstances, which are fraught with danger for officers and bystanders alike, may an officer conduct a brief pat-down for weapons (not a full-blown search) of the vehicle's passengers, regardless of whether those passengers' actions or appearance evidenced any independent indicia of dangerousness or suspicion.

Applying our holding regarding the automatic companion rule to the case at hand leads to the conclusion that the trial court did not err when it denied Owens's motion to suppress. So we affirm Owens's conviction and sentence.

sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be literally impossible of application by the officer in the field.' ") (*as quoted in* Belton*, 453 U.S. at 458, 101 S.Ct. 2860*); O'Shea, 62 Notre Dame L.Rev. at 760 ("The [automatic companion] doctrine would provide police officers with a bright line rule as

### III. *CONCLUSION.*

For the foregoing reasons, the judgment of the Taylor Circuit Court is affirmed.

All sitting. All concur.

to when they *could* search companions. The automatic companion rule, even though a bright line rule (which historically decreases a police officer's discretion), would allow police officers some discretion. An officer would not have to frisk every companion—but he would have that option. He could protect his life by using his own discretion.").