J-A07038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAHSAAN CARTER | |
| Appellant | No. 2031 WDA 2014 |

Appeal from the Judgment of Sentence November 18, 2014
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000163-2014

BEFORE:  BOWES, MUNDY AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 21, 2016**

Rashaan Carter appeals from the judgment of sentence entered November 18, 2014, following his bench trial convictions for possession of a controlled substance with intent to deliver, possession of a controlled substance, and possession of a small amount of marijuana.  We affirm.

The facts elicited at the suppression hearing are as follows.  Justin Arcurio, a detective employed by the Cambria County District Attorney's Office, testified that at approximately 12:00 p.m. on December 6, 2013, he was conducting surveillance at 512 Daniel Street, a high-crime area in Johnstown, to serve a bench warrant for Alicia Morris.  N.T. Suppression, 05/15/14, at 9.  He saw a black male, later identified as Thomas King, exit the surveilled residence and enter a nearby idling vehicle driven by

Appellant. *Id*. at 15. This vehicle was on the scene when surveillance began. *Id*. Officer Arcurio spoke to the two men to determine if they knew Alicia. King alternately stated he was "picking up" and "dropping off" something for a person named Keisha. *Id*. at 10. Appellant's version of events was inconsistent with that of King. Appellant told the officer he was from Philadelphia, and drove from Altoona to give King a ride from downtown Johnstown to the residence. *Id*. at 11. Thus, Appellant drove approximately one hour to give King a ride of less than ten minutes. *Id*. at 21. While the officer was speaking to King and Appellant, Morris exited the same residence King had left. *Id*. at 10. The detective conducted a background check and learned Appellant had a suspended driver's license and was not the owner of the vehicle. He told Appellant to step out of the vehicle and informed him a pat-down would occur. He then asked Appellant if he possessed anything the officer needed to know about, and Appellant informed him he possessed marijuana. *Id*. at 13. Appellant was then arrested. A search incident to the arrest yielded heroin, crack cocaine, and ecstasy pills. *Id*.

Appellant raises three claims for our consideration, each pertaining to the trial court's July 1, 2014 denial of the motion to suppress all physical evidence:

I. Whether there was reasonable suspicion to believe [Appellant] was involved in criminal activity to support an investigative detention[?]

II.     Whether there was reasonable suspicion to conclude [Appellant] was armed and dangerous to justify a pat-down search?

III.    Whether the lawfulness of a pat-down search is immaterial where a detainee admits to possessing drugs in response to a question for officer safety[?]

Appellant's brief at 4.

Our standard of review when reviewing an order denying a suppression motion is well-settled. We consider

only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law.

**Commonwealth v. Tam Thanh Nguyen**, 116 A.3d 657, 663-64 (Pa.Super. 2015) (citations omitted). Our scope of review is limited to the evidence presented at the suppression hearing. **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013). We may affirm a decision of the trial court on any basis if the record supports the trial court's actions. **Commonwealth v. Moser**, 999 A.2d 602, 606, n. 5 (Pa.Super. 2010).

Initially, we note that assessing the lawfulness of an encounter between police and a citizen first requires a determination of whether or not the citizen has been seized. Our law recognizes three categories of

police/citizen encounters, with graduating levels of suspicion required to justify the corresponding greater restraints on liberty.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa.Super. 2013) (citing *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)). Appellant argues that he was seized throughout the entire encounter. "There does not appear to be any dispute that, at the very least, [Appellant] was not free to leave." Appellant's brief at 14. That restriction is the hallmark of a seizure. "We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

We disagree that the initial encounter between Officer Arcurio and Appellant was a detention. *See Commonwealth v. Au*, 42 A.3d 1002, 1007 (Pa. 2012) (mere fact that police officer requested identification from occupant in a vehicle did not transform encounter into an investigative detention); *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) ("[P]olice

questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."). Officer Arcurio was clearly entitled to query the vehicle's occupants to determine if they knew anything about Morris. We accordingly find that the initial conversation with Appellant was a mere encounter.

However, it is equally apparent that at some point this consensual encounter transformed into a seizure. Since Appellant argues that he was detained throughout, he does not draw our attention to any particular action as transformative. Our Supreme Court has set forth the following standard for assessing whether an encounter has escalated to an investigatory detention.

> When assessing whether an interaction escalates from a mere encounter to an investigatory detention, we employ the following standard.
>
> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Roberts*, 133 A.3d 759, 771 (Pa. 2016) (quoting *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa.Super. 2012).

We agree with the Commonwealth that Fourth Amendment protections were triggered when Appellant was told to turn off the ignition and exit the vehicle. Commonwealth's brief at 5 (citing N.T., 5/15/14, at 19). At that moment, a reasonable person would not feel free to leave. This investigative detention needed to be supported by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1 (1968). "To establish reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Caban*, 60 A.3d 120, 128 (Pa.Super. 2012) (citation omitted).

We agree with the trial court that this detention was supported by reasonable suspicion. Upon checking Appellant's license, police learned he did not have a valid license and the vehicle did not belong to him. Drivers are required to possess a valid license. 75 Pa.C.S. § 1543. These facts permitted a seizure of Appellant and the order to exit the vehicle. *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*).

Having established Appellant was validly detained, we now address whether Detective Arcurio could lawfully perform a pat-down for weapons. We note that we depart here from the trial court's holding. The court found that, since Appellant advised the officer he had marijuana in his pocket in response to the officer's question, probable cause justified an arrest and a subsequent search incident to arrest. We disagree.[1] However, since we can affirm on any basis, we analyze whether the announced pat-down search met the required standard. "[A]n officer may conduct a limited search, *i.e.,* a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous." **Commonwealth v. Carter**, 105 A.3d 765, 769 (Pa.Super. 2014) (*en banc*) (citing **United States v. Place**, 462 U.S. 696, 702 (1983)).

_____

[1] The Commonwealth suggests that we adopt the trial court's holding. This position is troubling. In the Commonwealth's view, an officer may always announce he will pat-down any individual, regardless of whether the pat-down is proper, ask if there is anything he needs to know about, and thereby obtain consent if the person acknowledges possession of contraband or a weapon. If the individual is forthright—believing they must answer given the officer's stated intention—then the evidence could never be suppressed, even if the proposed pat-down was unjustified. On the other hand, if the pat-down is valid, asking the question is superfluous. **See Florida v. Bostick**, 501 U.S. 429 (1991) (police may ask bus passengers for consent to search luggage but cannot convey a message that compliance with their request is required). We thus decline to affirm on this basis.

The Commonwealth asks us to consider Appellant's conduct in addition to the actions of King and Morris. Commonwealth's brief at 8. The Appellant, on the other hand, requests that we focus on the facts that Appellant did not make any furtive movements, nor reach for his waistband, nor move to secret anything inside the vehicle, or otherwise act in a threatening manner. Appellant's brief at 22-23.

We first address what role, if any, the actions of King and Morris factor in the totality of the circumstances analysis. It is clear that Officer Arcurio could not lawfully pat down Appellant absent individualized suspicion. **See Commonwealth v. Grahame**, 7 A.3d 810, 814 (Pa. 2010). However, we do not agree that we must confine the individualized suspicion analysis to only those behaviors and circumstances the officer observed with respect to Appellant. Appellant's brief at 19-20. The phrase "totality of the circumstances" inherently encompasses the notion that we may consider the actions of others in determining individualized suspicion. The most extreme application of that logic is the automatic companion rule, which removes the requirement of individualized suspicion in some circumstances. The leading case for that rule is **United States v. Berryhill**, 445 F.2d 1189 (9th Cir. 1971).

> We think that **Terry** recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back

from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. **All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed.**

445 F.2d at 1193 (emphasis added). A plurality of this Court has rejected **Berryhill's** per se rule. **Commonwealth v. Graham**, 685 A.2d 132 (Pa.Super. 1996), **rev'd on other grounds**, 721 A.2d 1075 (Pa. 1998). Our Supreme Court has not directly addressed whether this rule is constitutional. **In re N.L.**, 739 A.2d 564, 568 (Pa.Super. 1999).[2]

We do not and cannot hold that the officer possessed reasonable suspicion that Appellant was armed and dangerous solely due to the actions of his companions.[3] However, a safety concern may be present when a possible cohort is arrested. Morris's arrest and King's statements, and Appellant's role in transporting King to the scene, contribute to the totality of

---

[2] Our Supreme Court recently granted a petition for allowance of appeal in **Commonwealth v. Mathis**, 134 A.3d 51 (Pa. 2016). In the underlying decision, we discussed the automatic companion rule. One of the questions in the case is whether reasonable suspicion existed to support a seizure and subsequent weapons frisk.

[3] Even if the rule could be applied, there is an unclear nexus between Appellant and the arrestee, and Appellant was probably not in the immediate vicinity.

the circumstances analysis when assessing whether Appellant posed a safety risk to the officer.

Next, we emphasize that this seizure was tantamount to a traffic stop. The case law has repeatedly recognized the particular dangers posed to police officers during a vehicular stop as pertinent to the *Terry* reasonable suspicion analysis. In ***Pennsylvania v. Mimms***, 434 U.S. 106 (1977), the Supreme Court held a police officer can order a driver to exit a lawfully-stopped vehicle. That demand was permitted even though "the officer had no reason to suspect foul play from the particular driver at the time of the stop, there having been nothing unusual or suspicious about his behavior." *Id*. at 109. This concern was grounded in safety. "We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty." *Id*. at 110.

Subsequently, in ***Maryland v. Wilson***, 519 U.S. 408 (1997), the Court extended ***Mimms's*** rule to passengers. The Court again balanced the personal liberty of passengers against an officer's safety.

> On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. **It would seem that the possibility of a**

**violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop.** And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.

*Id*. at 413-14 (emphasis added).

Thus, the applicable precedents recognize that the presence of a vehicle and the possibility of discovering evidence of a more serious crime are factors we must consider. These cases do not, of course, stand for the proposition that an officer may always pat down an individual who has been in a vehicle; they speak only to the authority to order persons from a vehicle. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) ("To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."). However, the underlying rationale of why our jurisprudence permits officers to interfere with a vehicle occupants' liberty in the first place is pertinent to our analysis.

We therefore find that the totality of the circumstances warrants affirmance. As this situation developed, it became readily apparent that both Appellant and King were possibly involved with Morris. "[I]t is incumbent upon us to recognize and account for the fluid nature of events as they were perceived by the officers at the time." *Commonwealth v. Epps*,

608 A.2d 1095, 1097 (Pa.Super. 1992) (citations omitted). Once the officer determined Appellant would not be permitted to drive the vehicle, Appellant's possible connection to King and Morris, combined with the inconsistent and illogical explanations advanced by King and Appellant, and the fact this incident occurred in a high-crime area, supported the officer's belief Appellant may have posed a risk to his safety. While Officer Arcurio was joined by other officers during this encounter, he did not know who else may have been in the residence or what other crimes may be occurring.

Nor can we ignore the possible danger posed by Appellant's presence in a vehicle that he would not be driving from the scene, given that he lacked a valid driver's license. As the Supreme Court has recognized, the possibility of a violent encounter in a vehicular situation stems "from the fact that evidence of a more serious crime might be uncovered[.]" **Wilson**, 519 U.S. at 414. Surely that possibility was multiplied under these facts to the point where Officer Arcurio justifiably feared for his safety. **See** **_Commonwealth v. Morris_**, 644 A.2d 721, 724 (Pa. 1994) ("Our constitutional safeguards do not require an officer to gamble with his life.").

Finally, we address Appellant's argument that the officer's statement that he "had a gut feeling that this wasn't adding up" amounted to nothing

more than a hunch. N.T. 5/15/14, at 21.[4] We disagree. The applicable test is an objective one. As the Supreme Court explained in *Terry*:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

*Terry*, *supra* at 21-22. Thus, the categorical dangers posed by vehicular stops need not be specifically stated by the officer. This was not a case where the officer's suspicions were aroused due to wholly subjective interpretations of inoffensive conduct. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa.Super. 2002) (*en banc*) ("A police officer's observation of a citizen's nervous demeanor and furtive movements, without

---

[4]  Appellant suggests Detective Arcurio was not concerned for his safety since he "was willing to walk up to the car and begin questioning [Appellant] and King **before** either the sheriff's deputy or Johnstown police officer[s] arrived." Appellant's brief at 27 (emphasis in original). We find this supports, not negates, a finding of reasonable suspicion. It demonstrates that the officer accounted for the fluid nature of events and did not impulsively act on a mere hunch.

more, establishes nothing more than a 'hunch,' employing speculation about the citizen's motive in the place of fact.").

Judgment of sentence affirmed.

Judge Mundy joins the memorandum.

Judge Jenkins files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2016